UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PRETTY GIRL, INC.,

                              Plaintiff,

         -against-

PRETTY GIRL FASHIONS, INC. and JOHN DOES 1-3,

                            Defendants.

**MEMORANDUM & ORDER**

**11-CV-0662 (NGG) (MDG)**

------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Pretty Girl, Inc. moves for a preliminary injunction to prevent Defendant Pretty Girl Fashions, Inc. and unknown individuals or entities who are legally responsible for Pretty Girl Fashions, Inc., John Does 1-3 (collectively, "Defendants") from using the name "Pretty Girl" in connection with Defendants' retail clothing business. Plaintiff states that Defendants' use of this name amounts to trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and several New York state law provisions. For the following reasons, Plaintiff's motion is GRANTED.

**I.    BACKGROUND**

      Plaintiff and its affiliates operate 33 retail clothing stores in New York City and the surrounding areas. (Pl. Mem. at 3 (Docket Entry # 3); Affidavit of Albert Nigri ("Nigri Aff.") (Docket Entry # 4) ¶ 2.) At each of its "Pretty Girl" stores, Plaintiff sells "fashionable yet affordable junior and ladieswear including ladies footwear." (Nigri Aff. ¶ 9.) Plaintiff has stores in New York, New Jersey, and Philadelphia, Pennsylvania. (Nigri Aff. ¶¶ 2, 12.)

      Plaintiff has used the name "Pretty Girl" in connection with its retail business since 1985. (Pl. Mem. at 3.) In November 2010, Plaintiff registered the trademark "Pretty Girl" with the

1

United States Patent and Trademark Office. (Nigri Aff. ¶ 4, Ex. E.) Plaintiff's application for a "Pretty Girl" service mark is currently pending. (Id.)

In or around December 2010, Defendants opened a retail store in Richmond Hill in Queens, New York, under the name Pretty Girl Fashions, Inc. (Pl. Mem. at 3; see also Nigri Aff. Ex. G (photograph showing exterior of Defendants' store).) Defendants use the name "Pretty Girl Fashions" on its signs, in its promotional materials, and within its store, including on its shopping bags and stationery. (Pl. Mem. at 3.) Like Plaintiff's stores, Defendants' store sells "ladieswear." (Id.)

On December 30, 2010, Plaintiff sent Defendants a letter notifying them that Plaintiff is the owner of the registered trademark "Pretty Girl" and demanding that Defendants cease and desist from use of this mark. (Nigri Aff. Ex. H.) Defendants have not complied with this demand. (Nigri Aff. ¶ 8.)

On February 10, 2011, Plaintiff commenced this action. The Complaint contains claims for trademark infringement under § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), as well as a number of state law claims: trademark dilution under N.Y. Gen. Bus. L. § 360-l; use of name with intent to deceive under N.Y. Gen. Bus. L. § 133; and unfair competition pursuant to New York common law. (Compl.) Plaintiff seeks an order permanently enjoining Defendants from using the "Pretty Girl" mark and awarding monetary damages and attorneys' fees. (Id.) Simultaneous with filing its Complaint, Plaintiff moved, by order to show cause, for a preliminary injunction prohibiting Defendants from using the "Pretty Girl" mark. Defendants have not filed any response or otherwise participated in this case.[1]

---

[1] Plaintiff served Defendants on February 15, 2011. (Docket Entry ## 7, 8 & 9.) Defendants' opposition papers, if any, were due by noon on Thursday, February 24, 2011. (Order to Show Cause (Docket Entry # 6).) Defendants have not filed a response and did not appear at the show cause hearing held on February 28, 2011.

## II. DISCUSSION

### A. Legal Standard

Traditionally, a party seeking a preliminary injunction in the Second Circuit was required to demonstrate: "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009) (internal quotation marks omitted). In a trademark infringement action, both parts of this standard were typically satisfied so long as the plaintiff could prove a likelihood of consumer confusion: "[W]here a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits." Virgin Enterprises, Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (citations omitted).

However, the Second Circuit's recent decision in Salinger v. Colting, 607 F.3d 68, 74-75 (2d Cir. 2010), a copyright infringement action, announced that this standard for injunctive relief had been abrogated by eBay, Inc. v. MercExchange, 547 U.S. 388 (2006). The three-judge panel in Salinger held that a plaintiff seeking a preliminary injunction must show (1) a likelihood of success on the merits; (2) that "he is likely to suffer irreparable injury in the absence of an injunction"; (3) that "remedies at law, such as monetary damages, are inadequate to compensate for that injury"; (4) that the balance of hardships tips in his favor; and (5) that "the 'public interest would not be disserved' by the issuance of a preliminary injunction." Salinger, 607 F.3d at 80 (citing eBay, 547 U.S. at 391). Although the panel in Salinger explicitly limited its holding

3

"to preliminary injunctions in the context of copyright cases," it also saw "no reason that eBay would not apply with equal force to an injunction in any type of case." Id. at 78 n.7. The Second Circuit has not yet spoken on this issue in the context of a trademark case; but the court agrees that there is no principled reason not to adopt the newly announced standard in the trademark context. The court concludes that the five-part preliminary injunction standard articulated in Salinger and eBay applies to this action, and Plaintiff has successfully demonstrated that a preliminary injunction is warranted in accordance with this standard.[2]

### B.  Probability of Success on the Merits

#### 1. Trademark Infringement under § 43(a) of Lanham Act

Plaintiff is likely to succeed on the merits of its Lanham Act claim for trademark infringement. Section 43(a) of the Lanham Act provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

The Second Circuit analyzes claims brought under § 43(a) in accordance with the two-prong test described in Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993). "The test looks first to whether the plaintiff's mark is entitled to protection, and second to

---

[2] Plaintiff's written submissions, which apparently assume that the older two-part preliminary injunction test applies here, rely on caselaw that largely pre-dates Salinger. At the Show Cause Hearing held on February 28, 2011, however, Plaintiff provided argument with regard to the additional Salinger / eBay factors. (See Tr. at 4-7.)

4

whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Virgin Enterprises, 335 F.3d at 146 (citing Gruner, 991 F.2d at 1074).[3]

    a. Plaintiff's Mark is Entitled to Protection

Both registered and unregistered trademarks can qualify for protection under § 43(a). Rescuecom Corp. v. Google Inc., 562 F.3d 123, 128 n.3 (2d Cir. 2009) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)). "To be valid and protectible, a mark must be capable of distinguishing the products it marks from those of others." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999) (citing Two Pesos, 505 U.S. at 768).

Distinctiveness is traditionally measured on a scale described by Judge Friendly in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9-11 (2d Cir. 1976). This formulation classifies trademarks on a continuum from least to most distinctive—as generic (the least distinctive category of mark), descriptive, suggestive, arbitrary, or fanciful (the most distinctive). Abercrombie, 537 F.2d at 9; see Two Pesos, 505 U.S. at 768 (discussing Abercrombie categories). The Second Circuit has further described these categories as follows:

> A generic mark is generally a common description of goods, one that refers, or has come to be understood as referring, to the genus of which the particular product is a species. A descriptive mark describes a product's features, qualities or ingredients in ordinary language, or describes the use to which a product is put. A suggestive mark employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of goods. [T]he term "fanciful," as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, *i.e.*, when it is applied in an unfamiliar way, the use is called "arbitrary."

---

[3] This two-prong test is applicable to trademark infringement claims brought under both 15 U.S.C. §§ 1125(a) and 1114(1). Virgin Enterprises, 335 F.3d at 148 (citing Time, Inc. v. Petersen Publ'g Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999)).

Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997) (internal quotations and citations omitted).

A mark's degree of distinctiveness determines whether it is entitled to protection. Marks that are "[f]anciful, arbitrary, and suggestive marks are deemed inherently distinctive . . . so they will be automatically protected." Lane Capital Mgmt., 192 F.3d at 344. By contrast, "[g]eneric marks are not protectible." Id. Descriptive marks fall in between. Because descriptive marks "are not inherently distinctive," plaintiffs typically must show that the mark has acquired distinctiveness, or "secondary meaning," before protection will be extended. Id.

In cases in which the plaintiff owns a *registered* trademark, however, no showing of secondary meaning is required and the plaintiff is entitled to a presumption that the mark is protected:

> A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce. See 15 U.S.C. § 1115(a). Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive. As a result, when a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of mark's protectibility by a preponderance of the evidence.

Lane Capital Mgmt., Inc., 192 F. at 345 (citations omitted).

Plaintiff argues that its "Pretty Girl" mark is entitled to protection because it is suggestive and therefore inherently distinctive or, in the alternative, because the mark has acquired distinctiveness through secondary meaning. (Pl. Mem. at 5-6.) Whether to classify Pretty Girl as a descriptive or suggestive mark is a close call, but the court finds that Plaintiff is correct that the mark falls into one of these two categories and that, as such, the mark is distinctive. At the least, Pretty Girl is a descriptive mark; and, because Plaintiff has registered a trademark in this name, it is entitled to a presumption of validity without a showing of secondary meaning.

6

  b. Defendants' Use of Mark is Likely to Cause Consumer Confusion

The landmark case <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492 (2d Cir. 1961), set out eight non-exclusive factors that guide courts' determinations as to whether a likelihood of confusion exists: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products; (4) evidence that the senior user may "bridge the gap" into the market occupied by the junior user's product; (5) evidence of actual confusion; (6) evidence that the junior mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. <u>Cadbury Beverages, Inc. v. Cott Corp.</u>, 73 F.3d 474, 478 (2d Cir. 1996). The Second Circuit has held that whereas "[s]ix of the <u>Polaroid</u> factors relate directly to the likelihood of consumer confusion," the remaining two—bad faith and the quality of the products—are more relevant to other issues, "such as harm to plaintiff's reputation and choice of remedy." <u>Virgin Enterprises</u>, 335 F.3d at 147. Here, the <u>Polaroid</u> factors suggest that Defendants' use of the "Pretty Girl" mark is likely to cause consumer confusion.

*Strength of the Mark.* The strength of a trademark is assessed with reference to its distinctiveness. <u>Virgin Enterprises</u>, 335 F.3d at 147-48 (concept of strength encompasses both "inherent distinctiveness" and "acquired distinctiveness"). "[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection." <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 871 (2d Cir. 1986). Although Plaintiff's service mark application is pending, it has already acquired a trademark in the name Pretty Girl. Accordingly, the mark is presumed to be distinctive and the strength of the mark weighs in Plaintiff's favor.

*Similarity of marks.* Defendants' mark "Pretty Girl" is identical to Plaintiff's but for the addition of the word "Fashions." The addition of one generic word does not transform the name

7

into a different mark. See, e.g., New York City Triathlon, 704 F.Supp.2d at 317 (finding "Defendant's addition of the work 'Club' does not change the emphasis on 'NYC Triathlon' . . . as the operative part of the mark"); see also A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689, 691-92 (2d Cir. 1972) (finding likelihood of confusion between CROSS pens and La Crosse pens). The similarity of the marks in the instant case substantially increases the likelihood of confusion between Plaintiff's and Defendants' stores.

*Proximity of the products.* This factor "concerns whether and to what extent the two products compete with each other." Cadbury Beverages, Inc., 73 F.3d at 480. In assessing the proximity of the parties' products, courts "look to the nature of the products themselves and the structure of the relevant market. Among the considerations germane to the structure of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." Id. (citations and internal quotations omitted). Here, the parties are in direct competition with one another. Both operate retail women's clothing stores in Queens, New York. Seven of Plaintiff's stores are located in Queens, some within a few miles of Defendants' store. (Nigri Aff. ¶ 12.) The close proximity of the products in this case increases the likelihood of consumer confusion.

*Likelihood of bridging the gap.* This factor concerns the likelihood that a plaintiff that is not in direct competition with the defendant at the time a suit is brought will later expand the scope of its business so as to enter the defendant's market. See Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1995). Because the parties in this case already occupy the same market, there is no gap to bridge, and this factor weighs clearly in Plaintiff's favor.

*Actual confusion.* Because "the Lanham Act seeks to prevent public confusion as to the origin of products, and to prevent a second user who chooses a confusingly similar mark from

exploiting the goodwill a first user has created for its trademark," evidence of actual consumer confusion is "particularly relevant." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739 (2d Cir. 1998); see also Virgin Enterprises, 335 F.3d at 151 ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion."). Although Plaintiff has provided no evidence of actual *consumer* confusion, it has cited two instances in which other entities—one of Plaintiff's vendors and its CIT Group—have inquired into whether Plaintiff and Defendants are affiliated. (Pl. Mem. at 9-10.) The fact that Defendants' mark has caused some degree of confusion among presumably sophisticated business entities that have ongoing relationships with Plaintiff does suggest that instances of confusion among potential customers may also exist.

*Sophistication of consumers.* "A trial court must consider the general impression of the ordinary consumer, buying under normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d at 746. "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in . . . trademarks will result in confusion concerning the source or sponsorship of the product." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992). Ordinary "retail customers," like those both Plaintiff and Defendants aim to attract, "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." Virgin Enterprises, 335 F.3d at 151 (quoting district court). Furthermore, retail customers purchasing inexpensive items are expected to exercise less care than retail customers purchasing expensive, luxury goods. See Gross v. Bare Escentuals Beauty, Inc., 641 F. Supp. 2d 175, 192 (S.D.N.Y. 2008) ("The greater the value of an article the more careful the typical consumer can be expected

9

to be...") (quoting McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979)). Purchasing "fashionable yet affordable ladieswear" does not require any heightened degree of sophistication.

*Bad faith and quality of Defendants' products.* Although Plaintiff claims that Defendants "deliberately engaged in deceptive commercial practices" (Pl. Mem. at 10), there is no evidence on the record of Defendants' bad faith. Nor is there evidence to support the inference that Defendants' products are inferior to Plaintiff's. The only support Plaintiff asserts with regard to this factor is the success and longevity of Plaintiff's business. (See Pl. Mem. at 10.) As noted above, however, these two factors are less pertinent to the court's likelihood of consumer confusion determination than to other aspects of the case. Virgin Enterprises, 335 F.3d at 147.

### 2. State Law Claims

Because Plaintiff has shown a likelihood of success on the merits with respect to the Lanham Act claim, the court need not reach the state law claims in order to issue a preliminary injunction. The scope of the relief sought at this stage—a preliminary injunction prohibiting Defendants from using the "Pretty Girl" name—is identical regardless of whether the Plaintiff would be likely to succeed on any of its additional claims.

### C. Irreparable Harm and Inadequacy of Remedies at Law

"Irreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" New York City Triathlon, 704 F.Supp.2d at 343 (quoting Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985)).[4] At the February 28, 2011 hearing, Plaintiff represented that,

---

[4] As recently as 2009, the Second Circuit has held that a "plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury" so

10

during the twenty-five years in which it has been in business in the New York City area, it has "developed . . . a substantial amount of good will among its customer base." (Tr. at 5.) Defendants' store, like Plaintiff's, is located in Queens, and "defendant[s] use[] the same advertising methods, the same names in the same geographic area in order to induce the same customer base into [their] space." (Id.) Plaintiff argues that the consequent dilution of its trademark and pending service mark cannot be quantified. (Id.). The court agrees that the harm Plaintiff will suffer in terms of its reputation and goodwill cannot be quantified, and that Plaintiff will be irreparably injured in the absence of a preliminary injunction.[5]

For these same reasons—because the losses of reputation and goodwill and subsequent loss of customers that Plaintiff will suffer are not precisely quantifiable—remedies at law cannot adequately compensate Plaintiff for its injuries. See generally Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts, 937 F.2d 77, 80 (2d Cir. 1991) ("The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights.") Furthermore, where a defendant provides no assurances that it will cease its infringing activity, this fact suggests that monetary damages are insufficient. Montblanc-Simplo GmbH v. Colibri Corp., 692 F.Supp.2d 245, 259 (E.D.N.Y. 2010). This is especially so where a defendant has defaulted. See id. Here, Defendant failed to appear at the Show Cause Hearing and has otherwise failed to respond. Defendant has provided no assurance

---

long as there has been no undue delay in bringing the claim. Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005); Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 246 (2d Cir. 2009). Were this presumption to continue to apply, Plaintiff would clearly prevail: There has been no undue delay in bringing this claim, the likelihood of confusion is great, and Defendants have offered no argument which would rebut a presumption in Plaintiff's favor. However, in light of Salinger—in which the Second Circuit rejected a parallel presumption in the copyright context, 607 F.3d at 74-75—a presumption of irreparable injury in trademark cases may no longer be warranted. See New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F.Supp.2d at 342-43. The court's finding of irreparable harm in this case does not depend on a presumption in Plaintiff's favor; even without the benefit of such a presumption, Plaintiff has shown that irreparable harm exists here.

[5] The court does not credit Plaintiff's conclusory statement that Defendant deliberately copied its mark. (See Pl. Mem. at 14.) This argument is without support and does not contribute to the court's finding of irreparable harm.

that it will not continue its infringing activity in the absence of an injunction. Accordingly, the court finds that remedies at law are inadequate to compensate Plaintiff in this case.

### D. Balance of the Hardships

Plaintiff correctly argues that the equities weigh in its favor. (Pl. Mem. at 14-15.) Plaintiff has operated under the name Pretty Girl for over twenty-five years and has a registered trademark and a pending service mark in that name. The strong likelihood of consumer confusion and potential losses both in terms of sales and reputation threaten to cause Plaintiff serious harm.

Although Defendants have offered no argument to this end, there is no question that changing the name of a new business will also cause Defendants hardship. However, this harm is mitigated by the fact that Defendants may continue to operate their business under a different name.[6] In this case, requiring Defendants to choose an alternate name for their newly formed business is less onerous than attempting to compensate Plaintiff for Defendant's use of its trademarked name.

### E. Public Interest

"[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." New York City Triathlon, 704 F.Supp.2d at 344 (citing SK & F, Co. v. Premo Pharm. Labs., Inc., 625 F.2d 1055, 1067 (3d Cir. 1980)). Because of the likelihood of consumer confusion in this case, the public interest would be served by the issuance of an injunction; this factor weighs in Plaintiff's favor.

---

[6] Notably, Defendant could have avoided this situation entirely by choosing a different name. Defendant could have discovered Plaintiff's stores, many of which are in close proximity to Defendant's business, with little research or effort. Likewise, had Defendant looked on the website of the United States Patent and Trademark Office, it would have discovered that Plaintiff had applied for a registered trademark and service mark in this name for use in a retail clothing business.

## III. CONCLUSION

Plaintiff has established that it will likely succeed on the merits of its trademark infringement claim, and the additional factors set forth in the five-part test announced in Salinger and eBay support the issuance of a preliminary injunction. Therefore, Plaintiff's motion for a preliminary injunction is GRANTED.

Defendants, their officers, agents, servants and employees and any persons in active concert or participation with them are hereby preliminarily enjoined from using or causing to be used in any form whatsoever, Plaintiff's trademark "Pretty Girl" or any colorable imitations thereof; and from marketing, distributing, selling, or offering for sale, listing in catalogs, or advertising any service or product bearing Plaintiff's trademark "Pretty Girl" or any colorable imitations thereof, including on signs, labels, packages, catalogs, shopping bags and advertising or promotional materials.

SO ORDERED.

Dated: Brooklyn, New York
March 10, 2011

s/Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge