UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

PRETTY GIRL, INC.,

                    Plaintiff,

<u>REPORT &
RECOMMENDATION</u>

        - against -

CV 11-662 (NGG)(MDG)

PRETTY GIRL FASHIONS, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Plaintiff Pretty Girl, Inc. ("plaintiff" or "Pretty Girl") brings this action against defendant Pretty Girl Fashions, Inc. ("defendant" or "Pretty Girl Fashions") alleging trademark infringement in violation of section 43(a) of the Lanham Act and New York law. By orders dated April 19, 2011 and January 17, 2012, the Honorable Nicholas G. Garaufis referred to me for report and recommendation plaintiff's motion for default judgment as to the relief to be awarded. <u>See</u> minute order dated April 19, 2011; ct. doc. 26.

<u>FACTUAL BACKGROUND</u>

    The pertinent facts are undisputed and are set forth in the Verified Complaint ("Ver. Compl.") (ct. doc. 1), the Affidavit of Albert Nigri dated February 9, 2011 submitted in support of plaintiff's motion for a preliminary injunction ("2/9/11 Nigri

Aff.") (ct. doc. 4), the Affidavit of Albert Nigri dated April 15, 2011 ("4/15/11 Nigri Aff.") (ct. doc. 20) and the Affidavit of Albert Nigri dated February 21, 2012 ("2/21/12 Nigri Aff.") (ct. doc. 29).

Pretty Girl operates 33 retail stores in New York City and the surrounding area selling women's apparel.  2/9/11 Nigri Aff. at ¶¶ 2, 9; Ver. Compl. at ¶ 13.  Plaintiff has used the name "Pretty Girl" in connection with its retail business since 1985.  2/9/11 Nigri Aff. at ¶ 4.  Plaintiff has owned U.S. Trademark Registration No. 3,872,879 for the name "Pretty Girl" for women's apparel since November 9, 2010 and its servicemark was registered on March 15, 2011.  See 2/9/11 Nigri Aff. at ¶ 4, Exh. D; 4/15/11 Nigri Aff. at ¶ 5, Exh. G.

In or around December 2010, defendant opened a retail store selling ladieswear in Richmond Hill, Queens under the name Pretty Girl Fashions, Inc.  Ver. Compl. at ¶ 7.  Defendant uses the name "Pretty Girl Fashions" on its signs and promotional materials within and outside its store, including on its shopping bags and stationary.  Id. at ¶ 8.

On December 30, 2010, plaintiff sent defendant a cease and desist letter notifying it that plaintiff is the registered owner of the trademark "Pretty Girl."  Ct. doc. 4 at 33.  Defendant still continued to use the mark.  2/9/11 Nigri Aff. at ¶ 8.

On February 10, 2011, plaintiff commenced this action seeking injunctive relief and damages against defendant for

-2-

trademark infringement under federal law and various claims under New York state law. By order dated March 14, 2011, Judge Garaufis granted plaintiff's motion for a preliminary injunction prohibiting defendant from using the "Pretty Girl" mark. See ct. doc. 12.

Defendants have failed to file an answer or otherwise move with respect to the Complaint. On January 12, 2012, Judge Garaufis granted plaintiff's motion for default judgment. See ct. doc. 26. Since Judge Garaufis granted plaintiff's motion for default judgment, I need not discuss defendant's liability and will address only the question of damages.

## DISCUSSION

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

Initially, plaintiff sought statutory damages for trademark counterfeiting under 15 U.S.C. § 1117. However, as I discussed at a conference held on February 10, 2012, plaintiff did not allege trademark counterfeiting in its complaint.[1] Indeed, Judge Garaufis relied on plaintiff's allegations of trademark infringement under 15 U.S.C. § 1125(a) in granting the preliminary injunction and the motion for default judgment. Counsel for plaintiff later conceded at a conference on February 21, 2012 that plaintiff was not entitled to statutory damages under section 1117 and has supplemented plaintiff's original damages submission with the affidavit of its President presenting evidence of defendant's profits. See 2/21/12 Nigri Aff.

Under section 1117(a) of the Lanham Act, a prevailing plaintiff is generally entitled to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. See 15 U.S.C. § 1117(a). Although the Second Circuit has held that defendant's willfulness is a prerequisite to recovery of defendant's profits, see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), lower courts in this Circuit have subsequently been divided on the question whether willfulness is required after the 1999 amendments to section 1117(a). Compare Cartier v. Aaron

---

[1] Whether plaintiff could properly assert a counterfeiting claim is questionable given the absence of proof that defendant's use of "Pretty Girl Fashions" is "identical with, or substantially indistinguishable from" plaintiff's registered mark so as to be "counterfeit" under the statute.

-4-

Faber, Inc., 512 F. Supp. 2d 165, 173 (S.D.N.Y. 2007) (willfulness no longer required) and Nike, Inc. v. Top Brand Co., 2005 WL 1654859, at *35-*36 (S.D.N.Y. 2005) (same) with Malletier v. Dooney & Bourke, Inc., 500 F. Supp. 2d 276, 280-81 (S.D.N.Y. 2007) (willfulness remains a requirement) and Life Servs. Supplements, Inc. v. Natural Organics, Inc., 2007 WL 4437168, at *5-*6 (S.D.N.Y. 2007) (same). In any event, defendant's default establishes that it willfully infringed on plaintiff's registered mark. See Coach v. O'Brien, 2011 WL 6122265, at *8 (S.D.N.Y. 2011) (wilfulness found where use confirmed after cease and desist letter was sent to defaulting defendant); Chloe v. Zarafshan, 2009 WL 1956827, at *6 (S.D.N.Y. 2009); Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407, at *6 (S.D.N.Y. 2006); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

To determine defendant's profits, plaintiff bears the burden of establishing the amount of defendant's sales while the burden shifts to the defendant to submit evidence of the costs to be deducted from its gross revenues. See Chloe, 2009 WL 1956827, at *5; Pedinol Pharm., Inc. v. Rising Pharm., Inc., 570 F. Supp. 2d 498, 501 (E.D.N.Y. 2008); 15 U.S.C. § 1117(a). Defendant also bears the burden of showing any sales that are not attributable to infringement. See Rodgers v. Wright, 2011 WL 722772, at *3 (S.D.N.Y. 2011); Rexall Sundown, Inc. v. Perrigo Co., 707 F. Supp. 2d 357, 359, 363 (E.D.N.Y. 2010). "If plaintiff is unable

to prove defendants' actual sales and/or profits with hard numbers, it is 'reasonable and appropriate' for the Court to estimate the correct amount using submissions from the parties." Rodgers, 2011 WL 722772, at *3. As a result, the Court may "engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." See PPX Enterps., Inc. v. Audiofidelity Enterps., 818 F.2d 266, (2d Cir. 1987); see also Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931); Brunswick Corp v. Spinit Reel Co., 832 F.2d 513, 526 (10th Cir. 1987) ("A defendant whose wrongful conduct has caused the difficulty in assessing damages cannot complain that the damages are somewhat speculative"). Any doubts regarding the amount of damages must be resolved against the infringer. See Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exchange, 2011 WL 7285038, at *5 (E.D.N.Y. 2011); Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc., 726 F. Supp. 2d 223, 224 (E.D.N.Y. 2010); Chloe, 2009 WL 2956827, at *5. However, if the court finds that recovery based on profits is "either inadequate or excessive," the court has the discretion to enter judgment in an amount found to be just under the circumstances of the case. See 15 U.S.C. § 1117(a). Recovery for a violation of the Lanham Act "shall constitute compensation and not a penalty." Id.

Plaintiff submits the affidavit of its President, Albert

Nigri, to establish defendant's sales and profits.  Mr. Nigri states that he has operated more than 60 retail stores in the New York metropolitan area since 1985, including 36 ladies wear retail stores currently.  2/21/12 Nigri Aff. at ¶ 2.  Mr. Nigri visited defendant's store during the week of February 13, 2012.  <u>Id.</u> at ¶ 4.  He observed that the defendant's store is approximately 2200 square feet which is similar in size to many of the Pretty Girl stores that he has operated.  <u>Id.</u>  He further observed that the type of merchandise sold, the method of display and the price points of the merchandise at defendant's store are similar to those of the merchandise sold at Pretty Girl stores.  <u>Id.</u>  The quantity of merchandise displayed at defendant's store and the number of employees working there are also similar to those at Pretty Girl stores of a similar size.  <u>Id.</u>  Based on his observations of defendant's store and his experience operating Pretty Girl stores in the New York metropolitan area, including Queens, Mr. Nigri, with the assistance of Pretty Girl's controller, created a profit and loss statement for a fictional Pretty Girl store operating at the location used by defendant's store.  <u>Id.</u> at ¶ 5.  According to Mr. Nigri's calculations, this fictional store would generate $1,000,000 in annual sales for a gross profit of $550,000.  <u>Id.</u> at ¶ 6.  Gross profit would be offset by annual expenses of approximately $239,050.00, for a net profit of approximately $310,950.00 per year or $25,912.50 per month.  <u>Id.</u>  Accordingly, plaintiff seeks lost profits in the

amount of $25,912.50 per month from December 2010 to the date of the entry of judgment.  Id.

Plaintiff's profit calculation is reasonable based on Mr. Nigri's experience operating similar sized stores selling similar merchandise.  See U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta Inc., 2009 WL 4351962, at *3-*4 (E.D.N.Y. 2009) (accepting estimates of defendant's revenue and profit by plaintiff's principal); see also Dor Yeshurim, 2011 WL 7285038, at *6 (endorsing approach of plaintiff providing its own testimony on defendant's estmated profits).  Although plaintiff's calculation is an approximation only, defendant's failure to appear has prevented a more accurate accounting.  However, plaintiff assumes in its request for damages that each sale by defendant's store during the relevant time period was a result of infringement.  Presumably, defendant would have sold some merchandise at its store even without infringing upon plaintiff's mark.  See Pedinol, 570 F. Supp. 2d at 507; Larsen v. Ortega, 816 F. Supp. 97, 112 (D. Conn. 1992).  Therefore, to avoid overcompensating plaintiff for its actual injury, I recommend granting plaintiff damages in the amount of $15,000 per month from December 2010 to February 2012 or $225,000.

Although Mr. Nigri requests in passing at the end of his more recent affidavit pre-judgment interest, plaintiff did not previously seek interest nor did it submit a proposed default judgment.  Under the circumstances, in light of the relatively

short time that defendant has been in operation and the necessarily imprecise determination of damages, I respectfully recommend that this Court exercise its discretion not to award pre-judgment interest. See Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 1060, 1064 (2d Cir. 1990) (award of pre-judgment interest is discretionary).

Injunctive Relief

In addition to monetary damages, plaintiff seeks a permanent injunction. In an action alleging trademark infringement, plaintiff must have established a likelihood of success on the merits in seeking a preliminary injunction or actually succeeded on the merits in seeking a permanent injunction and that: 1) plaintiff is likely to suffer irreparable injury in the absence of an injunction; 2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; 3) the balance of hardships tips in plaintiff's favor; and 4) the public interest would not be disserved by the issuance of a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 390 (2006) (permanent injunctive relief in patent action); Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (applying eBay to trademark action).

Here, plaintiff has actually succeeded on the merits due to defendant's default. In addition, by defaulting, defendant admits plaintiff's allegations of the likelihood of confusion which automatically establishes irreparable harm. See Genesee

Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Am. Cynamid Co. v. Campagna Per Le Farmacie in Italia S.P.A., 847 F.2d 53, 55 (2d Cir. 1988).

The second factor of inadequate remedies at law is satisfied "where the record contains no assurance against defendant's continued violation" of plaintiff's trademark. See Montblanc-Simplo Gmbh v. Colibri Corp., 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010). Where the defendant defaults, "[a] court may infer . . . that [defendant] is willing to, or may continue its infringement." Pearson Educ., Inc. v. Vergara, 2010 WL 3744033, at *4 (S.D.N.Y. 2010); see AW Indus., Inc. v. Sleepingwell Mattress Inc., 2011 WL 4404029, at *11 (E.D.N.Y. 2011); Montblanc-Simplo, 692 F. Supp. 2d at 259. Defendant is likely to continue to infringe plaintiff's mark in the absence of an injunction given its failure to respond to the complaint or otherwise participate in this action, even after issuance of a preliminary injunction, entry of default, and the grant of default judgment by Judge Garaufis.

The equities also weigh in plaintiff's favor. Plaintiff has operated under the name Pretty Girl for many years. Although defendant would likely suffer some harm from changing its store's name, it could not have built the same goodwill as plaintiff's stores over the comparatively short period of time it has been operating. Had it changed its name after plaintiff sent a cease and desist letter, any such harm would have been minimal.

As to the fourth factor, "the public has an interest in not being deceived - in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." NYC Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). There has been no evidence submitted that the merchandise sold by defendant's stores is inferior to that sold by plaintiffs. However, given the likelihood of confusion established by defendant's default, the public has an interest in the issuance of the injunction.

Therefore, I recommend converting the preliminary injunction already entered in this case into a permanent injunction.

Attorneys' Fees and Costs

Plaintiff seeks $25,531.25 in attorneys' fees for 54.25 hours at an hourly rate of $475.00 and $840 in costs. See ct. doc. 24-2.

Under the Lanham Act, reasonable attorneys' fees may be awarded to a successful plaintiff demonstrating willful infringement. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); 15 U.S.C. § 1117(a). Given the defendants' willful infringement and failure to participate in this action, an award of attorneys' fees and costs is appropriate.

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee."  Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989); see also Perdue v. Kenny A., 130 S.Ct. 1662, 1672-73 (2010) (discussing lodestar methodology in determining attorneys' fees to be awarded to prevailing party).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  "If such records are inadequate the Court may reduce the award accordingly."  Vernon v. Port Authority of New York and New Jersey, 220 F. Supp. 2d 223, 229

(S.D.N.Y. 2002).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190; see Perdue, 130 S.Ct. at 1672. The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)); see Perdue, 130 S.Ct. at 1672. Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005); Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Lochren v. Cty. of Suffolk, 344 Fed. Appx. 706, 708 (2d Cir. 2009); Arbor Hill, 522 F.3d at 190. The Second Circuit in Simmons v. N.Y. City Transit Auth., 575 F.3d 170 (2d Cir. 2009) clearly requires that the court "apply a presumption in favor of application" of the prevailing rate within the district. 575 F.3d at 175.

The "starting point for determination of a reasonable [hourly rate]" is based on "the fees that would be charged for similar work by attorneys of like skill in the area . . . ." Cohen v. W. Haven Bd. of Police Comm'rs, 638 F.2d 496, 506 (2d

Cir. 1980). To that end, the court receives guidance from (1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties. See Farbotko, 433 F.3d at 209 (citations omitted). Mr. Lieblich states in his affirmation that he is a 1982 graduate of Emory University Law School and has been practicing law in New York since 1983. However, he does not describe the area of law in which he has been practicing. Indeed, based on the number of hours Mr. Lieblich billed for legal research in this straightforward trademark infringement action and his apparent unfamiliarity with the inapplicability of statutory damages to this case, he does not appear to specialize in intellectual property litigation. Accordingly, the higher hourly rates approved in this district for attorneys with specialized knowledge in intellectual property matters are inapplicable. More generally, courts have found that the prevailing hourly rates for law firm partners in this district are between $300 and $400. See Concrete Flotation Sys., Inc. v. Tadco Construction Corp., 2010 WL 2539771, at *4 (E.D.N.Y. March 15, 2010) (collecting cases); Todaro v. Siegel Fenchel & Peddy P.C., 697 F. Supp. 2d 395, 399-400 (E.D.N.Y. 2010) (awarding $400 per hour for a partner with seventeen years of experience); Luca v. County of Nassau, 698 F. Supp. 2d 296, 301-02 (E.D.N.Y. 2010); Gutman v. Klein, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009); Whitney v. JetBlue Airways Corp., 2009 WL 4929274, at *7 (E.D.N.Y. Dec.

21, 2009); see also Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners") (citations omitted). I find that the rate requested of $475 per hour is above the general range awarded in this district and recommend reducing Mr. Lieblich's hourly rate to $400.00.[2] See General Nutrition Investment Co. v. General Vitamin Centers, Inc., 2011 WL 4344195, at *6 (E.D.N.Y. 2011) (reducing partners' hourly rates from $650 and $424 to $375 each); AW Indus., Inc. v. Sleepingwell Mattress Inc., 2011 WL 4404029, at *8 (E.D.N.Y. 2011) (approving partners' hourly rates of $395 and $345).

I further find that the time spent on this litigation is excessive. Counsel billed 10 hours for research and drafting the complaint, 29 hours for research and drafting the motion for a preliminary injunction, 12 hours for research and drafting the motion for default judgment and 6.25 hours for research and drafting in connection with supplementing the motion. See ct. doc. 24-2. This is an unreasonable amount of time to spend on court filings in a routine infringement action where the defendant defaulted. Moreover, some of the time spent on the filings in support of plaintiff's request for statutory damages

---

[2] Plaintiff does not offer any information to justify overcoming the presumption in favor of applying Eastern District rates even though counsel's offices are located in the Southern District of New York where courts tend to award slightly higher hourly rates. See Simmons, 575 F.3d at 175.

-15-

should be excluded since counsel concedes that statutory damages are unavailable here.  On the other hand, it appears that Mr. Lieblich did not bill for the time he spent attending the show cause hearing on February 28, 2011.  After balancing these considerations, I recommend reducing plaintiff's hours by 20%. See Carey, 711 F.2d at 1146 (recognizing that courts may apply across-the-board percentage reduction); Dor Yeshurim, 2011 WL 7285038, at *10 (reducing hours by 20% for excessive time spent). Applying the reduction in Mr. Lieblich's hourly rate and a 20% across-the-board reduction in the number of hours spent yields an attorneys' fee of $17,360.00.

I also find that plaintiffs' request for $840.00 in costs is reasonable.  Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); United States Football League v. National Football League, 887 F.2d 408 (2d Cir. 1989).  Here, plaintiffs' request for court filing fees and service of process fees are recoverable litigation costs.

## CONCLUSION

For the foregoing reasons, I recommend that plaintiff be awarded judgment against defendant in the amount of $225,000 in damages under 15 U.S.C. § 1117(a) plus $18,200 in attorneys' fees and costs, for a total judgment of $243,200.  I further recommend

that the preliminary injunction in effect be converted into a permanent injunction.

A copy of this report and recommendation will be sent by mail or electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to Judge Garaufis and the undersigned, by March 30, 2012. Failure to file objections within the time specified waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated: Brooklyn, New York
March 13, 2012

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE